

**ORDERED in the Southern District of Florida on March 23, 2026.**

_Scott M. Grossman_
_____
**Scott M. Grossman, Chief Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

INVESTMENTS SWK, LLC,                                  Case No. 24-10630-SMG

      Debtor.                                                 Chapter 7
_____/

LORNE A. WRAY,

      Plaintiff,

v.                                                             Adv. No. 25-1391-SMG

MARC P. BARMAT, Chapter 7 Trustee,

      Defendant.
_____/

**ORDER DISMISSING COMPLAINT FOR LACK OF SUBJECT**
**MATTER JURISDICTION AND DENYING MOTION TO REMAND**

Without seeking leave of this Court to do so Lorne Wray – the principal and

sole member of debtor Investments SWK, LLC – sued the chapter 7 trustee, Marc P.

Barmat, in state court while the debtor's bankruptcy case was still pending.

Mr. Barmat removed the state court civil action to this Court under 28 U.S.C. § 1452,[1] and now seeks its dismissal with prejudice based on judicial immunity, res judicata and collateral estoppel, and for failure to state a claim upon which relief may be granted.[2] For the reasons that follow, however, the Court must instead dismiss the complaint for lack of subject matter jurisdiction.

**Background**

Investments SWK filed a voluntary petition under chapter 11 of the Bankruptcy Code on January 24, 2024.[3] Its principal asset was a commercial office building in Pompano Beach, Florida.[4] Less than two months after the case was filed, two secured creditors moved to convert the case to a chapter 7 liquidation.[5] After that motion was filed, the debtor's attorney moved to withdraw as counsel.[6] The Court then granted the motion to convert,[7] granted the attorney's motion to withdraw,[8] and converted this case to chapter 7 on May 2, 2024. Marc P. Barmat was appointed as chapter 7 trustee,[9] and the Court then approved Mr. Barmat's employment of Furr and Cohen, P.A. as his counsel.[10]

---

[1] Dkt. No. 1.

[2] Dkt. No. 6.

[3] Case No. 24-10630-SMG (Main Case), Dkt. No. 1. The debtor had previously filed another bankruptcy case on November 22, 2022, but that case was dismissed on January 9, 2023. Case No. 22-18989-MAM (Bankr. S.D. Fla.).

[4] Main Case, Dkt. No. 207.

[5] *Id.*, Dkt. No. 49.

[6] *Id.*, Dkt. No. 58.

[7] *Id.*, Dkt. No. 70.

[8] *Id.*, Dkt. No. 77.

[9] *Id.*, Dkt. No. 73.

[10] *Id.*, Dkt. No. 78.

On July 25, 2024, the Court approved the trustee's sale of the office building for $5.5 million.[11] The sale price was insufficient to pay in full all claims secured by an interest in the office building and thus did not result in any proceeds being available for distribution to general unsecured creditors. Certain secured creditors, however, consented to a "carveout" from their proceeds to provide funds for the administration of the case.[12] Even this amount, however, was insufficient to pay in full all chapter 7 and chapter 11 administrative expense claims,[13] or any other unsecured claims given priority in payment by the Bankruptcy Code.[14] As a result, general unsecured creditors will not receive a distribution in this case.[15]

Mr. Wray – representing himself – had filed a $157,088.95 unsecured proof of claim for management services and consulting fees.[16] On July 19, 2024, the United States trustee objected to Mr. Wray's claim.[17] After Mr. Wray failed to timely file any response to the objection, on September 13, 2024, the Court entered an order sustaining the objection and disallowing Mr. Wray's claim.[18] Mr. Wray then filed four

---

[11] *Id.*, Dkt. No. 207.

[12] *Id.*, Dkt. No. 112.

[13] In a chapter 7 case that has been converted from chapter 11, the chapter 11 administrative expenses are subordinated to payment in full of the chapter 7 administrative expenses. *See* 11 U.S.C. § 726(b).

[14] *See* 11 U.S.C. § 507(a). Unsecured claims given priority by the Bankruptcy Code include administrative expenses (second priority), certain wages earned within 180 days of the bankruptcy filing (fourth priority), certain customer deposit claims (seventh priority), and certain tax liabilities (eighth priority). *Id.* Each class of priority claims must be paid in full before any funds can be paid to the next class in order of priority. *See* 11 U.S.C. § 726(a)(1). This means that when a case is "administratively insolvent" – i.e., there are insufficient funds to pay all administrative expense claims in full – there will be no distribution to any other priority class below that of administrative expenses, and no distribution to any general unsecured (nonpriority) creditors.

[15] Main Case, Dkt. No. 303.

[16] *Id.*, Claim No. 20–1.

[17] *Id.*, Dkt. No. 199.

[18] *Id.*, Dkt. No. 245.

successive motions to reconsider[19] the order disallowing his claim.[20] The Court denied each one.[21]

After closing on the sale of the office building and resolving other matters in the case, Mr. Barmat and his retained professionals filed final applications for compensation and reimbursement of expenses,[22] which the Court set for hearing at 10:30 a.m. on November 4, 2025.[23] All creditors – as well as Mr. Wray[24] – were given notice of the hearing to consider the final fee applications, as required by Federal Rule of Bankruptcy Procedure 2002(a)(6).[25] Mr. Wray did not file any objections to the final fee applications, nor did he attend the hearing.[26] On November 13, 2025, the Court then entered an order approving and awarding final fees and expenses to Mr. Barmat as trustee, as well as to Mr. Barmat's law firm, Furr and Cohen, P.A., as attorneys for the trustee.[27] No party has appealed that order.

About an hour before the time set for the final fee application hearings in this Court, Mr. Wray – rather than attending and raising any objections (to the extent he even had standing to do so) – instead was filing a complaint for damages against

---

[19] *Id.*, Dkt. Nos. 274, 287, 289–290, 298.

[20] Both the United States trustee's objection and Mr. Wray's repeated requests for reconsideration of the order disallowing his claim proved to have been futile. There was no money available for distribution to unsecured creditors (indeed, the sale did not even generate enough to pay all secured claims in full). With no funds available for distribution to unsecured creditors, Mr. Wray's recovery on his claim would have been $0.00 whether his claim was allowed or not.

[21] *Id.*, Dkt. Nos. 284, 288, 291, 299.

[22] *Id.*, Dkt. Nos. 269, 279, 296, 297.

[23] *Id.*, Dkt. Nos. 310, 311, 312.

[24] Because Mr. Wray's claim was disallowed by a final order, he is not a creditor.

[25] *Id.*, Dkt. Nos. 313, 314, 317, 319.

[26] *See id.*, Dkt. No. 331.

[27] *Id.*, Dkt. No. 326. The Court also entered separate orders on November 5, 2025, approving and awarding the final fees and expenses of the trustee's other retained professionals. *Id.*, Dkt. Nos. 321, 322.

Mr. Barmat in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida.[28] In his complaint, Mr. Wray asserts six counts against Mr. Barmat, seeking damages of $157,088.95, plus treble damages of $457,266.85, plus punitive damages of $2,000,000.00 under Florida Statutes § 768.73(b)(2)(c), for a total claim of $2,628,335.80, as follows:

- Count I – Marc P. Barmat's (the "Trustee") Deceptive Tactic I, Violations of Court Order [Doc 77];
- Count II – Marc P. Barmat's (the "Trustee") Deceptive Tactic II, Violation and abuse of Court Order [Doc 81];
- Count III – Marc P. Barmat's (the "Trustee") Deceptive Tactic III, Trustee's Violation of Florida Statute § 817.034 ("Scheme to Defraud");
- Count IV – Marc P. Barmat's (the "Trustee") Deceptive Tactic IV, Act of Violation, Intentional Misconduct and Gross Negligence Actions;
- Count V – Marc P. Barmat's (the "Trustee") Deceptive Tactic V, Mail Fraud; and
- Count VI – Marc P. Barmat's (the "Trustee") Deceptive Tactic VI, Fraudulent Scheme, Marc P. Barmat, tht [*sic.*] Trustee, is "collectable."

Through these six counts, Mr. Wray essentially alleges that Mr. Barmat obstructed Mr. Wray's mail by taking possession of mailbox keys, the result of which was that Mr. Wray allegedly did not receive certain correspondence, including the United States trustee's objection to his proof of claim.

On November 25, 2025, Mr. Barmat removed that civil action to this Court under 28 U.S.C. § 1452(a).[29] He then moved to dismiss the complaint with prejudice.[30] The Court set the motion to dismiss for hearing on February 3, 2026.[31] In advance of

---

[28] *Wray v. Barmat*, No. 50-2025-CA-011575-XXXA-MB (Fla. Cir. Ct. Nov. 4, 2025).
[29] Dkt. No. 1.
[30] Dkt. No. 6.
[31] Dkt. No. 10.

that hearing, Mr. Wray filed an expedited motion for remand[32] which the Court also heard on February 3, 2026.[33]

Although this Court has approved final compensation applications for Mr. Barmat and his professionals in the debtor's bankruptcy case, and Mr. Barmat has begun making final distributions from the estate, he has not concluded doing so. As such, the case remains open. According to Mr. Barmat at the February 3, 2026 hearing, he is still holding approximately $30,000.00 for distribution to holders of certain unpaid administrative expense claims.

## Discussion

Mr. Barmat seeks dismissal with prejudice based on judicial immunity, res judicata and collateral estoppel, and for failure to state a claim upon which relief may be granted.[34] Before getting to the substantive grounds for dismissal, the Court must first consider its own subject matter jurisdiction, which here requires an analysis of both the *Barton* doctrine and removal jurisdiction. In *Barton v. Barbour*,[35] the Supreme Court held in 1881 that "a court of another State has not jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him for a cause of action arising in the State in which he was appointed and in which the property in his possession is situated, based on his negligence or that of his servants in the performance of their duty in respect of such property."[36] In other

---

[32] Dkt. No. 13.
[33] Dkt. No. 14.
[34] Dkt. No. 6.
[35] 104 U.S. 126 (1881).
[36] *Id.* at 137.

6

words, under what became known as the *Barton* doctrine, before suing a court-appointed fiduciary in a court other than that which appointed the fiduciary, the plaintiff must first obtain leave of the appointing court to do so. Failure to obtain prior leave deprives the court in which suit is brought of subject matter jurisdiction.

In 2000 in *Carter v. Rodgers*,[37] the Eleventh Circuit first applied the *Barton* doctrine to bankruptcy cases and held that "a debtor first must obtain leave from the bankruptcy court before it can initiate an action" in another court "when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity."[38] Since that time, however, the Eleventh Circuit has pared back its *Barton* jurisprudence to exclude closed bankruptcy (and receivership) cases,[39] where the estate – the *res* over which the court exercised in rem jurisdiction – no longer existed.[40]

This case, however, is still open and there is still an estate over which this Court has exclusive jurisdiction.[41] As such, the *Barton* doctrine applies and, as a result, the state court lacked subject matter jurisdiction over Mr. Wray's complaint

---

[37] 220 F.3d 1249 (11th Cir. 2000).

[38] *Id.* at 1252; *see also Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009).

[39] *See In re Keitel*, 636 B.R. 845, 848–52 (Bankr. S.D. Fla. 2022) (summarizing the Eleventh Circuit's *Barton* doctrine jurisprudence from *Carter*, 220 F.3d 1249 (applying *Barton* to bankruptcy cases), to *Lawrence*, 573 F.3d 1265, 1269 (extending *Barton*'s protection to "court-approved counsel, other court-approved professionals, and even certain creditors the court found to have functioned as court appointed officers"), to *Tufts v. Hay*, 977 F.3d 1204 (11th Cir. 2020) (holding that *Barton* does not apply when the bankruptcy court's in rem jurisdiction ends), to *Chua v. Ekonomou*, 1 F.4th 948 (11th Cir. 2021) (disavowing previously endorsed policy considerations for applying *Barton*, but noting that court-appointed receivers are entitled to judicial immunity for acts taken within the scope of their authority)).

[40] *See Chua*, 1 F.4th at 954; *Tufts*, 977 F.3d at 1209.

[41] *See* 28 U.S.C. § 1334(e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction — (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.").

because he did not first obtain leave of this Court before filing his suit.[42] Because

removal jurisdiction is a derivative jurisdiction, however, if there was no jurisdiction

in the state court, then this Court also lacks subject matter jurisdiction.

As Justice Brandeis stated for the Supreme Court in its 1922 opinion in

*Lambert Run Coal Co. v. Baltimore & O.R. Co.*:[43]

> As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.[44]

Thus, under *Barton* the state court lacked subject matter jurisdiction over Mr. Wray's

complaint when he filed it. Under *Lambert Run Coal*, however, Mr. Barmat's removal

of that suit to this Court does not cure the jurisdictional defect. There was no

jurisdiction when the complaint was filed, so there is no jurisdiction here, and the

Court must therefore dismiss Mr. Wray's complaint.[45]

---

[42] *See Carter*, 220 F.3d at 1252.

[43] 258 U.S. 377 (1922).

[44] *Id.* at 382 (citing *Courtney v. Pradt*, 196 U.S. 89, 92 (1905); *American Well Works v. Layne*, 241 U.S. 257, 258 (1916)); *see Reynolds v. Behrman Capital IV L.P.*, 988 F.3d 1314, 1317 (11th Cir. 2021) ("if a state court lacks subject-matter jurisdiction over a case when it is initially filed, a federal court also lacks subject-matter jurisdiction when the case is removed (even if the federal court would have had jurisdiction had the case originally been filed in a federal forum).").

[45] If this Court had subject matter jurisdiction over this adversary proceeding, however, the Court would have dismissed it with prejudice based on judicial immunity under *In re Juravan*, 2024 WL 4677417, at *6 (11th Cir. 2024); *Chua*, 1 F. 4th at 955; and *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 602 (11th Cir. 1985), as well as on the preclusive effect of this Court's earlier rulings in this case. *See* Main Case Dkt. Nos. 245, 284, 288, 291, 299, 326.

## Conclusion

Accordingly, it is **ORDERED** that:

1. Mr. Barmat's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

2. The complaint is **DISMISSED** for lack of subject matter jurisdiction.

3. Mr. Wray's motion to remand is **DENIED**.

4. All other relief requested by Mr. Barmat is **DENIED WITHOUT PREJUDICE**.

# # #

*All counsel of record will receive copies of this Order by CM/ECF. The Clerk is directed to serve a copy of this Order by mail to:*

Lorne A. Wray
11419 W Palmetto Park Road, #970102
Boca Raton, FL 33497

9